UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONALD FRANGIPANI,  :   ECF Case
          :
     Plaintiff,  :
          :   No. 08 Civ. 5675 (GBD)
   - against -  :
          :
HBO; BRYANT GUMBEL; RICK BERNSTEIN;  :
ROSS GRENBURG; KIRBY BRADLEY; ANDREW  :
BENNETT; JOE PERSKIE; TRES DRISCOLL;  :
and ARMEN KETEYIAN; COLLECTORS  :
UNIVERSE INC., d/b/a PSA/DNA  :
AUTHENTICATION SERVICES; JAMES SPENCE  :
AUTHENTICATION; JAMES SPENCE,  :
individually; RICHARD SIMONE SPORTS;  :
RICHARD SIMON, individually;  :
     Defendants.  :
          :

---

**MEMORANDUM SUBMITTED ON BEHALF OF THE
HBO DEFENDANTS IN SUPPORT OF THEIR MOTION TO
<u>DISMISS THE COMPLAINT OR FOR SUMMARY JUDGMENT</u>**


David A. Schulz
LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
321 West 44th Street, Suite 510
New York, NY 10036
(212) 850-6100

*Attorneys for Defendants Home Box Office, Inc.,
Bryant Gumbel, Rick Bernstein, Ross Greenburg,
Kirby Bradley, Joe Perskie and Armen Keteyian*

## PRELIMINARY STATEMENT

This memorandum is submitted on behalf of defendants Home Box Office, Inc. ("HBO"), Bryant Gumbel, Rick Bernstein, Ross Greenburg, Kirby Bradley, Joe Perskie, and Armen Keteyian (collectively, the "HBO Defendants"),[1] in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the Complaint or for summary judgment.

In his Complaint, plaintiff Donald Frangipani joins a single, stale claim of defamation against the HBO Defendants to a series of 38 inter-related RICO conspiracy, antitrust, fraud, tortious interference and other claims he is asserting against three of his direct business competitors. The defamation claim challenging HBO's news reporting is not based on any statement allegedly made by those competitors and does not involve the same set of facts as plaintiff's challenges to the business practices of the other defendants. The Court thus has no subject matter jurisdiction over the unrelated state-law defamation claim between non-diverse parties, Frangipani and HBO.

To the extent jurisdiction does somehow exist, the claim against HBO should still be dismissed because it is time-barred under New York's one-year statue of limitations governing defamation claims. The Complaint concedes that the challenged HBO report was first televised more than two years ago, but attempts to side-step the statute of limitations by alleging "on information and belief" that HBO has supposedly televised the report "numerous times in the past year." It has not. As demonstrated below, the disputed report has not been telecast by HBO since February 2006, and it is plainly time-barred. For this reason, too, the single libel claim against the HBO Defendants should be dismissed.

---

[1] Defendants Andrew Bennett and Tres Driscoll, also identified in the Complaint as "HBO Defendants," have not been served as of the filing of this motion.

## BACKGROUND[2]

### A.   <u>The Parties</u>

Plaintiff Donald Frangipani is a forensic document examiner engaged in the business of authenticating celebrity autographs, and considers himself to be one of the top autograph authenticators in the sports memorabilia business. (Cmplt., ¶¶ 2, 18, 20.) His business involves inspecting the purported autographs of famous people on various items of memorabilia to determine their authenticity, and issuing a Certificate of Authenticity ("COA") if he confirms a signature to be genuine. (Id. ¶ 21.) Collectors rely upon such COAs as evidence of authenticity when they buy and sell memorabilia. (*Id.* ¶ 22.) Frangipani is a resident of New York. (*Id.* ¶1.)

Defendant Home Box Office, Inc. operates the HBO and Cinemax premium television programming services that are distributed to subscribers by cable, satellite, and other companies. (*Id.* ¶ 4.) HBO's principal place of business is in New York. (*Id.*)

According to the Complaint, the individual HBO Defendants "produced and narrated" a report entitled "Forgers Paradise" that was first telecast by HBO on January 17, 2006 as part of the HBO program "Real Sports with Bryant Gumbel" ("Real Sports"). (*Id.* ¶¶ 5, 34.) The report concerned the way the Internet can be used to sell fake, autographed sports memorabilia to the public. (Id. ¶¶ 25-26, 37.)

The other defendants are individuals and entities who constitute three of Frangipani's direct competitors in the business of autograph authentication services. (*Id.* ¶¶ 7-16.) Frangipani alleges, *inter alia*, that these three competitors have engaged in a conspiracy to discredit him by

---

[2] The HBO Defendants accept the allegations of the Complaint as true solely for purposes of this motion to dismiss. *E.g., Van Buskirk v. New York Times Co.*, 325 F.3d 87, 89 (2d Cir. 2003) (all factual allegations in a complaint must be accepted by the court as true in evaluating a motion under Fed. R. Civ. P. 12 (b)(6)).

summarily rejecting without examination all sports memorabilia he has previously authenticated. (*Id.* ¶¶ 71-72.)

## B. The HBO Report Disputed By Frangipani

In his Complaint, Frangipani characterizes at great length the HBO report on which his claim of defamation is based. (*E.g.*, *Id.*, ¶¶ 34-68.) A complete copy of that report is submitted herewith for the Court's reference. *See* Declaration of Stephanie S. Abrutyn, sworn to July 16, 2008 ("Abrutyn Aff."), Ex. 1.[3]

Titled "Forger's Paradise," the HBO report described how the rise of the Internet has made possible the sale of millions of dollars of fake sports memorabilia to the public. The report featured interviews with a convicted member of a massive forgery ring, referred to only as "Eddie," and with the head of the FBI unit that busted the forgery ring. Both the FBI and the convict highlighted the central role of COAs issued by purported experts to the success of the Internet scam. As Eddie put it: "I have to tell you the only reason this forgery ring worked is we were able to find quote unquote forensic experts." (Abrutyn Aff., Ex. 1; *see* Cmplt. ¶ 45.)

In the HBO report, both the FBI and Eddie refer to Frangipani as someone who facilitated fraud on the Internet by issuing COAs for fake autographs. The FBI agent interviewed by HBO referred to Frangipani as the "authenticator of choice" for the forgery ring (Complt. ¶ 48), and Eddie explained how the forgery ring came to rely upon plaintiff: "I'd send him [Frangipani] a few items, came back to me over night, all authenticated, tried a few more items, and slowly but surely there wasn't anything that was turned down." (*Id.* ¶ 53.) The HBO report also included a

---

[3] Although plaintiff did not annex a copy of the HBO report to his Complaint, on a motion to dismiss the Court may consider such extrinsic material that is integral to the Complaint itself. *E.g.*, *Global Network Comm'cns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (court may consider the legal document upon which a plaintiff's complaint stands or falls); *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (court need not accept Complaint's description of an agreement, but may look to the agreement itself).

3

telephone conversation intercepted by the FBI in which an unidentified person asks Eddie: "Still have somebody that can cert[ify] my shit?" To which Eddie answers: "Frangipani." The unidentified person then responds "Frangipani, yeah he does everybody's shit, doesn't he?" (*Id.* ¶ 51.) The report also pointed out that, "[a]ll told, Frangipani issued COAs for thousands of pieces sent to him by Eddie's ring – COAs that can now be found by the box load in [the FBI's warehouse]." (*Id.* ¶ 55.)

The HBO report included a demonstration of how Frangipani would issue COAs for fake signatures. It presented hidden camera videotape of a reporter taking seven items of sports memorabilia with fake autographs to Frangipani for authentication. After Frangipani certified the authenticity of the goods, the reporter returned to interview Frangipani and informed him that the items he had authenticated were fake. Frangipani is shown responding to the disclosure by asking, "Who said they were fake?" (*Id.* ¶¶ 65-66.) In subsequent questioning, Frangipani denied that he had authenticated all the fakes he had received from Eddie's ring, objecting that he had rejected plenty too. (*Id.* ¶ 66.) The HBO report notes that Frangipani was never charged with any involvement in the forgery ring itself. (*Id.* ¶ 59.)

### C. **Plaintiff's Defamation Claim Against HBO**

The Complaint identifies four statements in the HBO report that Frangipani contends to be false and defamatory:

1. Frangipani objects to HBO's use of the FBI's characterization of him as the "authenticator of choice" for the forgery ring. He contends that there is no evidence to establish that he ever actually authenticated any fake autograph. He also objects that the number of items submitted to him by the forgery ring was "miniscule" compared to the hundreds of thousands items seized by the FBI. (*Id.* ¶¶ 47-48.)

4

2. Frangipani denies the truth of the statement in the HBO report that he "issued COAs for thousands of pieces sent to him" by the forgery ring, and alleges that HBO's inclusion of video of a box full of fake COAs in the FBI's warehouse bearing his signature implicitly conveys this same false statement. (*Id.* ¶¶ 49, 55-56.) Frangipani contends that the fake COAs were themselves forgeries prepared by the ring without his knowledge or participation. (*Id.* ¶ 50.)

3. Frangipani objects to the inclusion of Eddie's explanation that the forgery ring would go "directly to [Frangipani]" when it wanted a fake signature authenticated, because "there wasn't anything that was turned down." (*Id.* ¶¶ 53-54.) Frangipani says he turned down as fake some 50 to 60 out of 474 items provided to him by the forgery ring for review. (*Id.* ¶¶ 30, 53.)

4. Frangipani finally objects to the manner in which HBO depicts his authentication of seven autographs provided to him by HBO. He contends that the report is false and misleading because there is no evidence that the signatures he authenticated for HBO are forgeries, and because the HBO presentation concerning these seven items furthered the false implication that Frangipani had certified "thousands or millions of forged items from the forgery ring," which he flatly denies. (*Id.* ¶¶ 65-67.)

**D.**   **The Unrelated Claims Against Other Independent Parties**

Beside the single claim of defamation advanced against the HBO Defendants, the Complaint contains 38 separate causes of action against Frangipani's main business competitors and the principals of those firms. The various claims against these defendants include RICO conspiracy claims, antitrust claims, fraud and a number of other business torts and statutory violations. The HBO Defendants are not named in any of these other 38 causes of action. Conversely, the Complaint does not allege that any of the other defendants were quoted in the challenged HBO report or participated in the alleged defamation by the HBO Defendants.

5

## ARGUMENT

### I.

### THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE LIBEL CLAIM AGAINST THE HBO DEFENDANTS

No diversity jurisdiction exists over Frangipani's state law claim against the HBO Defendants because both Frangipani and HBO are residents of New York. (*Id.* ¶¶ 1, 4.) *See Herrick Co. v. SCS Commc'ns Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (diversity jurisdiction requires complete diversity of citizenship between the parties). Jurisdiction thus lies over this claim, if at all, only to the extent that supplemental jurisdiction exists under 28 U.S.C. § 1367. It does not.

A United States District Court possesses supplemental jurisdiction over a state law cause of action against a pendent party only if the claim is "so related" to a claim over which federal jurisdiction exists that the two claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006). To form part of the same controversy, the state law claim and the claim over which federal jurisdiction exists must both "'derive from a common nucleus of operative fact.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)); *see also Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir.1991) (same); *FTC v. Crescent Publ'g Group, Inc.*, 129 F. Supp. 2d 311, 318 (S.D.N.Y. 2001) (same). As the Second Circuit has explained, this requires that "the facts underlying the federal and state claims substantially overlap[] . . . [or] the federal claim necessarily [brings] the facts underlying the state claim before the court."

*Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (internal citations omitted).

In *Kirschner v. Klemons*, 225 F.3d 227 (2d Cir. 2000), for example, the Court of Appeals found no supplemental jurisdiction over claims against a pendent party based largely on facts that were not relevant to the claims against the other parties. In *Kirschner*, a dentist sued several state officials under 42 U.S.C. § 1983 contending that they had violated his rights to free expression by imposing professional sanctions for what he considered to be constitutionally protected speech. Kirschner's Complaint also included separate state tort claims against a private party, Goldman, against whom no federal claims were filed. The Second Circuit held that supplemental jurisdiction did not exist over these state law claims because they raised discrete factual issues: the claims against Goldman were based primarily on his alleged actions in encouraging patients to complain about the way plaintiff treated them, while the claims against the other parties were based on testimony and actions taken during the subsequent disciplinary hearing and misuse of confidential information from that hearing. Because the claims "arise out of a different nucleus of fact", no supplemental jurisdiction existed over the claim. 225 F.3d at 239.

Similarly, in *Semi-Tech Litigation LLC v. Bankers Trust Co.*, 234 F. Supp. 2d 297, 299-301 (S.D.N.Y. 2002) this court found no supplemental jurisdiction over former directors of a corporation in an action against an indenture trustee brought under the federal Trust Indenture Act. Even though the claims arose out of the same financial transactions, they involved significantly different factual inquiries—the federal claim could be resolved by comparing the terms of a trust certificate to the federal statute, while the claims against the corporate directors required a factual inquiry into the substance and fairness of the transactions and the directors

7

motives. *Id.* Consequently, the claims did "not arise from a common nucleus of operative fact and [were] not such as one reasonably would expect to try in the same proceeding," so that the court "lack[ed] the power to hear the claims" against the corporate directors. *Id. See also, Lussier,* 211 F.3d at 704-05 (no supplemental jurisdiction where a loan that was central to state law claims was "irrelevant to the federal claim"); *Burgess v. Omar,* 345 F. Supp. 2d 369, 371-72 (S.D.N.Y. 2004) (no supplemental jurisdiction over counterclaim where complaint focused on what transpired in relation to the sale of the business, while counterclaims alleged long-term looting of the corporate defendants).

Here, supplemental jurisdiction similarly does not exist over plaintiff's discrete claim for libel against the HBO Defendants. The HBO Defendants are not parties to any of the other 38 causes of action, and none of the defendants over whom federal jurisdiction may exist are parties to the single state law claim advanced against the HBO Defendants. While the Complaint alleges that Frangipani's reputation was damaged by various actions of all defendants, the allegedly wrongful conduct by the HBO Defendants in reporting the news is not based on the same facts that form the basis of plaintiff's claim that his competitors are engaging in improper business practices. Frangipani's defamation claim against HBO is not even based on anything said or done by the other defendants—it is based on statements by the FBI, on an interview with a member of the forgery ring, and on actions allegedly taken by the HBO Defendants themselves.

On the facts alleged, the libel claim against the HBO Defendants plainly does not arise from the same set of operative facts as the federal claims being advanced against other parties. No supplemental jurisdiction exists for plaintiff to litigate in this Court his state tort claim against the HBO Defendants, and the claim should be dismissed.

8

## II.

## **THE LIBEL CLAIM AGAINST THE HBO DEFENDANTS IS TIME-BARRED**

Frangipani's libel claim should be dismissed even if jurisdiction does exist, because it is plainly time-barred. Under New York law,[4] all claims for defamation are governed by the one-year statue of limitations imposed by C.P.L.R. §215(3). *E.g.*, *Shamley v. ITT Corp.*, 869 F.2d 167 (2d Cir. 1989) (defamation claim time-barred if publication occurred more than one-year before complaint filed). This action, however, was commenced more than two years after the HBO report was last telecast.

The "Real Sports" report challenged by Frangipani as false and defamatory premiered on HBO on January 17, 2006. (Cmplt., ¶34.) Recognizing that a claim based on this telecast is obviously time-barred, plaintiff alleges "upon information and belief" that "the segment has [subsequently] been aired on HBO numerous times in the past year." (*Id.* ¶35.) Plaintiff provides no factual basis for this alleged belief, and none exists. While the report was telecast more than once by HBO, the last date on which it appeared on any HBO channel was February 5, 2006. *See* Affidavit of Rolande Prince, sworn to July 9, 2008 ("Prince Aff.") at ¶4.[5] The

---

[4] New York law governs Frangipani's libel claim against the HBO Defendants. In evaluating the choice of law, New York applies to all tort claims "the law of the state with the most significant interest in the litigation." *Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999). Where, as here, the events involving plaintiff took place in New York, the alleged damages to plaintiff occurred primarily in New York, the defendants are largely domiciled in New York, and the challenged report was prepared in New York, there can be no serious dispute that New York has the most significant interest in the litigation. *See, e.g.*, *Levin v. McPhee*, 917 F. Supp. 230, 236 (S.D.N.Y. 1996) (applying New York law when publication took place in New York, the publisher was headquartered in New York, the events reported occurred in Russia, and plaintiff was domiciled in Washington, D.C.), *aff'd*, 119 F.3d 189 (2d Cir. 1997); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 2007 WL 4820968, at *3-5 (S.D.N.Y. Sept. 18, 2007) (applying New York law where the events at issue took place in New York and the defendant was domiciled here); *Berwick v. New World Network Int'l, Ltd.*, 2007 WL 949767, at *7-8 (S.D.N.Y. Mar. 28, 2007) (applying New York law where the events took place in New York, the damages occurred in New York, and many of the defendants were domiciled in New York).

[5] A court considering a motion under Fed. R. Civ. P. 12 is authorized under Rule 12d to consider matters outside the pleadings by converting the motion to one for summary judgment and allowing the

9

segment has not been replayed on any HBO channel since February 5, 2006, more than two full years before Frangipani initiated this action. (*Id.*) The statute of limitations had long since expired when Frangipani filed his Complaint on June 24, 2008. *See Van Buskirk*, 325 F.3d at 88-89 (New York defamation statute of limitations begins to accrue on date of publication); *Tomasino v. William Morrow & Co.*, 571 N.Y.S.2d 571, 572 (2d Dep't 1991) (same).

Plaintiff is completely off-base in straining to resurrect his libel claim by alleging, again "upon information and belief," that HBO supposedly has continued to offer the report to the public "for viewing on demand." (Cmplt., ¶36.) Apart from the fact that such "on demand" viewing would not as a matter of law revive a time-barred claim,[6] the challenged report has not been available from HBO for on demand viewing since February 13, 2006. (Prince Aff. ¶5.)

---

opposing party to present any material pertinent to the motion. *See e.g., Tewskbury v. Ottaway Newspapers*, 192 F.3d 322, 325 n.1 (2d Cir. 1999).

[6] *See, e.g., Firth v. State*, 775 N.E.2d 463 (N.Y. 2002) (that defamatory statement is continuously available on an Internet website does not avoid the single publication rule, which triggers statute of limitations at time of initial publication and bars multiple claims based on Internet availability absent a republication by the publisher itself).

## CONCLUSION

For the reasons stated herein, this Court should dismiss at the outset the defamation claim against the HBO Defendants.

Dated: July 16, 2008
      New York, New York

                             Respectfully submitted,

                             LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.

                             By: _____
                                 David A. Schulz

                             LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.
                             321 West 44th Street, Suite 510
                             New York, NY 10036
                             (212) 850-6100

                             *Attorneys for Defendants Home Box Office, Inc., Bryant Gumbel, Rick Bernstein, Ross Greenburg, Kirby Bradley, Joe Perskie, and Armen Keteyian*