UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| DONALD FRANGIPANI, | : | ECF Case |
| | : | |
| Plaintiff, | : | No. 08-Civ. 5675 (GBD) |
| | : | |
| vs. | : | |
| | : | |
| HBO et al., | : | |
| | : | |
| Defendants. | : | |

---

## MEMORANDUM OF LAW OF COLLECTORS UNIVERSE, INC. IN SUPPORT OF ITS MOTION TO DISMISS UNDER FRCP RULE 12(b)(6)

Defendant Collectors Universe, Inc. ("CU"), by its attorney of record, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint in this case.

## INTRODUCTION

Plaintiff, a sports memorabilia authenticator, alleges that Defendant CU violated RICO as well as §1 of the Sherman Act through CU's own sports autograph authentication division known as PSA/DNA ("PSA"). Plaintiff, however, fails to meet the most basic pleading requirements of either statute, and this failure is fatal to the Complaint as a matter of law.  With respect to both claims, the Complaint also fails on a second ground, namely, failure to allege proximate cause in the case of RICO, and "antitrust injury" in the case of the antitrust claim.

Should the Court dismiss these federal claims and retain jurisdiction over the additional state law claims against CU, those too must be dismissed as insufficiently pleaded for the reasons stated below.

## I – PLAINTIFF FAILS TO STATE A RICO CLAIM AGAINST CU

Plaintiff's RICO claim (Second Cause of Action) is based entirely on the allegation that CU's PSA division "fraudulently" did not fully examine certain memorabilia items submitted to it by members of the public, but simply declared "not genuine" all items that had previously been declared authentic by Plaintiff.  This claim fails for several reasons: (1) Plaintiff does not allege a RICO "enterprise" separate from CU itself; (2) Plaintiff doesn't properly allege any RICO "predicate act"; (3) Plaintiff doesn't establish proximate cause under applicable RICO pleading standards.

### A – Plaintiff Doesn't Plead a RICO "Enterprise" Separate from CU Itself

The Complaint alleges that (1) CU "is the parent company of PSA/DNA Authentication Services ('PSA')" (para. 8); (2) "Collectors and PSA have engaged in a pattern of racketeering" (para. 95); (3) "Collectors and PSA are an 'enterprise' as that term is defined in 18 U.S.C. §1961" (para. 99); and (4) "As the parent company, Collectors has participated in and approved of PSA's actions… and is jointly and severally liable for all damages caused by PSA's actions" (para. 101).

This pleading violates the settled RICO requirement that the RICO "enterprise" be separate from the "persons" who are the RICO defendants.  *Cedric Kushner Promotions, Ltd. V. King*, 533 U.S. 158 (2001); *Bennett v. U.S. Trust Co. of NY*, 770 F.2d 308, 315 (2d Cir. 1985), *cert. denied*, 474 U.S. 1058 (1986)("plain language of section 1962(c) …clearly envisions two entities") Particularly where, as here, the RICO person-defendant is a corporate parent alleged to have formed an "enterprise" with its own subsidiary, the courts have granted motions to dismiss for failure to satisfy RICO's requirements. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055,

1062-64 (2d Cir. 1996), *vacated on other grounds sub nom. NYNEX Corp. v. Discon*, 525 U.S.

128 (1998):

> "[T]he … defendants were acting within the scope of a single corporate structure,
> guided by a single corporate consciousness.  It would be inconsistent for a RICO
> person, acting within the scope of its authority, to be subject to liability simply
> because it is separately incorporated…."

Because Plaintiff pleads no "enterprise" separate from CU and its PSA division, the RICO claim

fails.

### B – Plaintiff Doesn't Plead A RICO Predicate Act

Plaintiff alleges that "Through a pattern of racketeering activity, namely fraud, PSA has

conducted and participated in the affairs of PSA as an enterprise."  (Complaint, para. 96)

Plaintiff does not indicate which of the statutory RICO predicate acts he's alleging, but

presumably it is mail fraud under 15 U.S.C. §1343.  The "fraud", as Plaintiff describes it,

involves (1) PSA's mailing "rejection letters" to customers which Plaintiff alleges falsely assert

that PSA has performed a "thorough examination" of submitted memorabilia items (para. 106);

(2) PSA's "knowingly false" representation to customers that it can render "quick opinions" for a

fee regarding the likely authenticity of memorabilia items by examining scans of such items

(paras. 111-14).

With respect to the "rejection letters", Plaintiff does not allege that anyone other than

Plaintiff himself was injured by these letters.  At most, Plaintiff seems to be saying that some

PSA customers have memorabilia items which Plaintiff says is genuine and PSA says is not

genuine, and that PSA did not perform the "thorough examination" it advertised to customers.

This does not constitute mail fraud under 15 U.S.C. §1341, which is the only RICO predicate act

even remotely close to the allegations.  It is important to note that Plaintiff does not allege that

PSA lied to customers when it opined that their items were fake, i.e., *that PSA believed that the items were genuine but nevertheless opined otherwise*. Rather, Plaintiff argues that PSA's examination of the items was cursory and arbitrary, contrary to its advertisements that its examination is "thorough". This semantic difference falls far short of "facts that give rise to a strong inference that the defendant possessed fraudulent intent," a requirement in mail fraud cases. *See, e.g., Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993).

As for the "quick opinions", again Plaintiff seems to be saying that PSA's customers did not get the opinions they bargained for, because according to Plaintiff "there is no way to tell from a scanned image whether or not an item is genuine" (Complaint, para. 112). And as with the rejection letters, Plaintiff does not contend that PSA *knowingly declared genuine items to be fake*. Rather, he states only that PSA's attempts to examine scans of memorabilia result in "many items of memorabilia [being] incorrectly identified as likely genuine when they were not authentic, or identified as not likely genuine, when they were authentic." (para. 116) But PSA's representation that it can render a "quick opinion" under such circumstances, however misguided Plaintiff may believe it to be, does not constitute anything remotely resembling mail or wire fraud under 15 U.S.C. §§1341 or 1343.

Having failed to plead fraud as a predicate act, the RICO claim must fail. *Mills, supra*.

**C – Plaintiff Doesn't Plead Proximate Cause**

In *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), the Supreme Court held that a RICO plaintiff must show that the defendant's predicate act "not only was a 'but for' cause of his injury, but was the proximate cause as well." In this case, Plaintiff alleges that CU's PSA division "fraudulently" declared that items previously authenticated by Plaintiff were fake, but alleges no direct injury to himself as a result of that conduct. Rather, he says PSA's actions

harmed him because "Those seeking authentication of memorabilia no longer seek the opinion or services of Plaintiff as they know that if their item has previously been authenticated by Plaintiff, the item will automatically be rejected and declared a fake by PSA."

This is precisely the sort of "indirect injury" which the Court in *Anza* stated was insufficient to support a RICO claim.  In *Anza*, the plaintiff alleged that it was harmed because its competitor fraudulently underpaid its sales taxes and was, therefore, able to reduce its prices and attract customers away from plaintiff.  The Court, in assessing whether this was sufficient as a RICO injury, outlined the serious problems with basing a RICO claim on injuries suffered by someone other than the direct victim of the alleged mail fraud:

> "To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax.  The cause of Ideal's asserted harms, however, is a set of actions (offering lower prices) entirely distinct from the alleged RICO violation (defrauding the State)….
>
> "The injury Ideal alleges is its own loss of sales resulting from National's decreased prices for cash-paying customers.  National, however, could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud….Likewise, the fact that a company commits tax fraud does not mean the company will lower its prices…
>
> "There is, in addition, a second discontinuity between the RICO violation and the asserted injury.  Ideal's lost sales could have resulted from factors other than petitioners' alleged acts of fraud.  Businesses lose and gain customers for many reasons, and it would require  a complex assessment to establish what portion of Ideal's lost sales were the product of National's decreased prices….The element of proximate causation recognized in Holmes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.  It has particular resonance when applied to claims brought be economic competitors, which, if left unchecked, could blur the line between RICO and the antitrust laws."
>
> "….The requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation can be expected to vindicate the laws by pursuing their own claims.  …There is no need to broaden the universe of actionable harms to permit RICO suits by parties who have been injured only indirectly."

Here, Plaintiff's only alleged RICO damages are from memorabilia collectors who, he says, stopped asking him for his opinion regarding their items because they thought that the items he declared authentic would later be declared fake by PSA.  The primary cause of the damages – the individual decisions of thousands of individual collectors to employ authenticators other than Plaintiff – are not attributable directly to PSA's alleged predicate acts which, as shown above, relate only to PSA allegedly not delivering on promises made to customers regarding the thoroughness of its examinations.  As in *Anza*, any competitive advantage derived by PSA, and any losses of business suffered by Plaintiff, could have arisen from many other causes which are also alleged in Plaintiff's Complaint.  It goes without saying that the FBI's "Operation Bullpen", which exposed Plaintiff's having authenticated hundreds – if not thousands -- of items for a counterfeit memorabilia ring (Complaint, paras. 30, 55), and the HBO television special which stated among other things that Plaintiff was the ring's "authenticator of choice" (Complaint, para. 46), would have had a far more direct impact on the public's view of Plaintiff than any "fraud" PSA is alleged to have perpetrated on its customers.

## II. PLAINTIFF FAILS TO STATE A SECTION 1 SHERMAN ACT CLAIM

The Complaint (Third Cause of Action) alleges a *per se* violation of §1 of the Sherman Act, but does not state a claim against CU under that statute.

A. **Plaintiff Fails to Plead an Agreement or Group Boycott Violative of §1.**

The rule of *per se* illegality applies only where "the challenged action falls into the category of 'agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable.'" *Northwest Wholesale Stationers, Inc. v Pac. Stationery & Printing Co.,* 472 U.S. 284, 289 (1985) (quoting *No. Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958)).  Such limited categories of restraints – such

as horizontal price-fixing and market allocation agreements among competitors – are

conclusively presumed to restrain competition unreasonably without any inquiry into the

restraint's market impact or actual effect on competition. The Supreme Court has therefore

confined the rule to situations where a "practice facially appears to be one that will always or

almost always tend to restrict competition and decrease output." *Broadcast Music, Inc. v.*

*Columbia Broad. Sys.,* 441 U.S. 1, 19-20 (1979). *See also FTC v. Indiana Fed'n of Dentists*, 476

U.S. 447, 458-59 (1986) (cautioning against "extend[ing] *per se* analysis to restraints imposed in

the context of business relationships where the economic impact . . . is not immediately

obvious").

　　Plaintiff makes no such allegation in this case. He alleges only that CU and Defendants

James Spence and JSA, other autograph authenticators, "conspired to eliminate competition from

Plaintiff in the signature authentication industry nationwide." (Complaint, para. 119).  Plaintiff

makes no other allegations regarding when, how, and where any "conspiracy" was created or its

objectives executed.  He does not even allege an "agreement" in restraint of trade, a fundamental

requirement of §1 of the Sherman Act.  *See* 6 P. Areeda, Antitrust Law ¶ 1417b, at 98 (1986)

("Mere conspiratorial opportunity is routinely and correctly held insufficient to support a

conspiracy finding." (footnote omitted)). *See also Kreuzer v. Am. Acad. of Periodontology*, 735

F.2d 1479, 1488 (D.C. Cir. 1984), "the mere showing of frequent relations between alleged

conspirators . . . is insufficient to infer an illegal agreement." (citations omitted).

　　A "group boycott," or concerted refusal to deal – the only type of practice sometimes

categorized as *per se* illegal that Plaintiff's allegations could even remotely be thought to

resemble – nevertheless requires considerably more than Plaintiff alleges. For a group boycott to

fall within the *per se* rule, a plaintiff generally must allege not only that there was a combination

of defendants acting together to suppress competition, but that the combination (1) possesses

market power or exclusive access to an element essential to effective competition; and (2) denies

the plaintiff relationships it needs to survive. *See Northwest Wholesale Stationers, supra*, 472

U.S. at 294 (citations omitted):

> [Group boycott] cases to which this Court has applied the per se approach
> have generally involved joint efforts by a firm or firms to disadvantage
> competitors by "either directly denying or persuading or coercing
> suppliers or customers to deny relationships the competitors need in the
> competitive struggle." In these cases, the boycott often cut off access to a
> supply, facility, or market necessary to enable the boycotted firm to
> compete, and frequently the boycotting firms possessed a dominant
> position in the relevant market. In addition, the practices were generally
> not justified by plausible arguments that they were intended to enhance
> overall efficiency and make markets more competitive. Under such
> circumstances the likelihood of anticompetitive effects is clear and the
> possibility of countervailing procompetitive effects is remote.

*See also Indiana Fed'n of Dentists, supra*, 476 U.S. at 458 ("the category of restraints classified

as group boycotts is not to be expanded indiscriminately, and the *per se* approach has generally

been limited to cases in which firms with market power boycott suppliers or customers in order

to discourage them doing business with a competitor . . . ."); *Rothery Storage & Van Co., v.*

*Atlas Van Lines*, 792 F.2d 210, 216 (D.C. Cir. 1986) (citing *Northwest Wholesale*

*Stationers*, 472 U.S. 284*), cert. denied*, 479 U.S. 1033 (1987).

Plaintiff completely fails to plead the necessary elements of a *per se* case. There

are no allegations regarding the definition of the relevant market, or the market share of

CU's PSA division, James Spence and JSA.  Nor does Plaintiff allege an agreement or any

"restraint" at all, much less one that affected competition as a whole in the memorabilia

authentication marketplace.

### B -- Plaintiff Alleges No Antitrust Injury

A plaintiff cannot complain under the Sherman Act about conduct which affects its own business negatively, but does not affect competition in the relevant market as a whole. As the court put it in *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 486 (D.C.Cir. 1996):

> [A] plaintiff claiming federal antitrust violations must plead and prove "more than injury causally linked to an illegal presence in the market." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). Because the antitrust laws "were enacted for 'the protection of competition, not competitors,'" Id. at 488 (quoting Brown Shoe Co. v. United States, 370 U.S. 294, 320 (1962)), [plaintiffs] must allege facts that would show an anticompetitive impact on the market as a whole…
>
> While Dial A Car alleges injury to itself, that injury involves only one specific competitor and is insufficient to support a finding that the market as a whole is or will be injured.

*See also Paycom Billing Servs. v. Mastercard Int'l,* 467 F.3d 283 (2d Cir. 2006)("'The antitrust injury requirement ensures that a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior.' Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 344 (1990) (emphasis in original)"). This principle is an essential check on a private plaintiff's ability to turn state law tort claims into federal offenses, with the additional penalties and stigma attached thereto.

This case is a classic example of why the "antitrust injury" requirement is needed. The most that Plaintiff alleges is a decrease in its market share and an increase in PSA's, Spence's and JSA's market share. (Complaint para. 121) But simply "[s]hifting [Plaintiff's] sales to [PSA] and other competitors in the market does not directly affect consumers and therefore does not result in antitrust injury." *Pool Water Prods. v. Olin Corp*, 258 F.3d 1024, 1036 (9th Cir. 2001) ("decrease in one competitor's market share. . . affects competitors, not competition").

## III – PLAINTIFF FAILS TO STATE A COMMON LAW FRAUD CLAIM

To plead a claim for common law fraud under New York law, a complaint must allege that the defendant made a material misrepresentation, that the defendant knew of its falsity and possessed an intent to defraud, and that the plaintiff reasonably relied on the misrepresentation and suffered damage as a result. *Kaye v. Grossman*, 202 F.3d 611, 614 (2d Cir. 2000). Fed. R. Civ. P. 9(b) requires that all fraud claims be pleaded with particularity, and that "when a complaint charges fraud, it must (1) detail the statements . . . that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements . . . were made, and (4) explain why the statements . . . are fraudulent." *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996). Dismissal under Rule 12(b) is appropriate where a plaintiff cannot state a cause of action.

As stated in Section I above, the "fraud", as Plaintiff describes it, involves

- PSA's mailing "rejection letters" to customers which Plaintiff alleges falsely assert that PSA has performed a thorough examination of submitted memorabilia items (para. 106).

- PSA's "knowingly false" representation to customers that it can render "quick opinions" for a fee regarding the likely authenticity of memorabilia items by examining scans of such items (paras. 111-14).

Assuming that Plaintiff satisfies requirements (1) and (2) of Rule 9(b) by pleading that PSA made the alleged statements, the Complaint nevertheless fails to meet the other key pleading requirements. There is no indication of when the statements were made other than time frames ranging from "1999" (paras. 69-73) to "2003" (paras. 102-03), to "June 2005" (para. 147). Apart from the obvious possibility that some or all of Plaintiff's claims are time-barred, Plaintiff presumably could have, but doesn't, allege which particular memorabilia items he

10

contends were processed by PSA in a fraudulent manner.  In this case, only such a particularized

pleading would satisfy the "when" requirement.

Neither does Plaintiff plead sufficiently why the alleged statements were fraudulent.  He

simply alleges that PSA failed to do what it represented to customers, with no factual

substantiation whatsoever. See *Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, 02 Civ.

767, 2003 U.S. Dist. LEXIS 11108, at \*31 (S.D.N.Y. June 30, 2003) ("If 'explain why' is to

have any meaning, it must mean more than merely contradicting a statement, and offering as

support a rewording of that statement in the negative.").

Finally, as stated in Section I *supra*, Plaintiff does not allege either (1) facts creating a

strong inference of fraudulent intent on PSA's part; or (2) any reliance or actual damages to

himself proximately caused by the alleged fraud. At most, Plaintiff seems to be saying that some

PSA customers have memorabilia items which Plaintiff says are genuine and PSA says are not

genuine, and vice versa, because PSA did not perform the "thorough examination" it advertised

to customers.  But New York law requires a showing that "the loss was a 'direct result of the

defendant's wrongful actions and [that it was] independent of other causes'….[B]ut for

allegations are insufficient to state a cause of action." *Bennett v. U.S. Trust, supra*, 770 F.2d at

314 (citation omitted).  As with Plaintiff's other claims, the lack of direct injury alleged to have

been caused by PSA, and the extensive allegations with respect to harm allegedly caused to

Plaintiff's business by the FBI investigation and the HBO television special, doom Plaintiff's

common law fraud claim against CU.

## IV – PLAINTIFF FAILS TO STATE A GEN. BUS. LAW §349 CLAIM

General Business Law § 349 is a consumer protection statute designed to protect against

"[d]eceptive acts or practices in the conduct of any business, trade or commerce or in

the furnishing of any service in this state" (General Business Law § 349 [a]).  For the same

reasons as described above in Sections I and III of this Memorandum, Plaintiff's spare

allegations concerning PSA do not rise to "deceptive acts or practices" under this statute.

But a second problem dooms Plaintiff's §349 claim.  It is settled that this statute does not

apply to indirect, or derivative injuries, but only to direct injuries suffered by the named plaintiff

as a result of the deceptive practice.  As the New York Court of Appeals explained in *Blue Cross*

*& Blue Shield of N.J. v. Phillip Morris, Inc.*, 3 N.Y. 2d 200, 206-07 (2004), in response to

certified questions from the Second Circuit relative to the scope of §349:

> [P]laintiff argues that, in enacting General Business Law § 349, the Legislature
> intended to abrogate the common-law rule and permit recovery for derivative
> injuries.  But …. "It is axiomatic concerning legislative enactments in derogation of
> common law, and especially those creating liability where none previously existed,
> that they are deemed to abrogate the common law only to the extent required by
> the clear import of the statutory language" .
>
> To be sure, the language of the statute permits recovery by any person injured
> "by reason of" a deceptive business practice. But we will not presume an intent to
> include recovery for derivative injuries within the scope of the statute in the
> absence of a clear indication of such intent from the Legislature. Indeed, we have
> warned against "the potential for a tidal wave of litigation against businesses that
> was not intended by the Legislature".

[citations omitted]

In this case, the only damages claimed by Plaintiff relative to PSA are derivative and

remote, i.e., that PSA's false representations to its customers caused those customers to lose faith

in the quality of Plaintiff's services, thereby causing a drop of Plaintiff's business.  These are

outside the direct injury requirement of §349.

## V – PLAINTIFF FAILS TO STATE A TORTIOUS INTERFERENCE CLAIM

Plaintiff's tortious interference claim is time-barred against PSA, in that he alleges only what he himself describes as a single "wrongful and fraudulent systematic practice" (Complaint, para. 150), but then alleges that this practice commenced harming him in 1999 (paras. 69-73), and 2003 (paras. 102-03), long beyond New York's three-year limitations period for the tort. See N.Y. CPLR §214[4].

But even if the claim weren't time-barred, it doesn't satisfy the basic elements of a tortious interference claim, namely: (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and improper procurement of the third party's breach; and (4) damages (*Lama Holding Co. v Smith Barney, Inc.,* 88 NY2d 413, 424 (1996); *Guard-Life Corp. v. S.Parker Hardware Mfg. Corp.,* 50 NY2d 183,189-190 (1980). Plaintiff alleges no "valid contract", but only "business relationships" with unnamed collectors who employed his authentication services from time to time. Plaintiff likewise doesn't allege that PSA had "knowledge" of any contracts, but only of the fact that specific items belonging to PSA's customers had once been authenticated by Plaintiff (there's no allegation that the person(s) submitting these items to PSA had *themselves* previously submitted those items to Plaintiff). Plaintiff doesn't allege facts supporting the proposition that PSA intentionally procured any contract breaches, but only that "but for PSA's actions, these collectors and members of the public would have continued to enter into business relationships with Plaintiff" (Complaint, para. 152). This, of course, ignores Plaintiff's own allegations concerning the injurious impact of the FBI investigation and the HBO television special.

Finally, to the extent that the Complaint is intended to plead a cause of action for interference in "non-binding" or "prospective" business relations, Plaintiff does not allege facts constituting a "crime" or "independent tort" as required by New York law. See *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004).

## VI – PLAINTIFF FAILS TO STATE DEFAMATION CLAIMS

In order to establish a *prima facie* claim of defamation, a party must show a "false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must cause special harm or constitute defamation *per se*." *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999). Plaintiff's libel claim fails for three reasons. First, it doesn't describe with specificity any defamatory statement "of or concerning" Plaintiff himself. Second, the statements alleged to have been made by PSA are statements of opinion as a matter of law, and are not actionable. Third, Plaintiff doesn't plead a libel per se and pleads no special damages.

### A – Plaintiff Doesn't Identify any Specific Defamatory Statements Relating to Him

Libel plaintiffs "must identify a plausible defamatory meaning of the challenged statement or publication." *Celle v. Filipino Reporter Enters. Inc.,* 209 F.3d 163, 178 (2d Cir. 2000). A defamatory meaning is one that "exposes an individual to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or induces an evil opinion of one in the minds of right-thinking persons, and deprives one of confidence and friendly intercourse in society." *Id*. at 177 (internal quotation marks, alterations and citations omitted). While it falls to the jury to determine if a plaintiff was actually defamed, a court must decide as a threshold issue if the defamatory statement "is reasonably susceptible to

the defamatory meaning imputed to it." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997). *See*

*Golub v. Enquirer/Star Group, Inc.*, 89 N.Y.2d 1074 (1997). In making this judgment, the court

is not to read the allegedly libelous statements alone, but must read them "as the average reader

would against the whole apparent scope and intent of the writing." *Celle, supra*, 209 F.3d at 177

(internal quotation marks omitted).

It is likewise well-settled that libel claims must be based on allegations that "the allegedly

libelous statements were made 'of and concerning' the plaintiff." *New York Times Co. v.*

*Sullivan*, 376 U.S. 254, 288 (1964). In this case, Plaintiff alleges no statement by PSA which

uses his name or can in any way be interpreted as relating to him. Rather, Plaintiff alleges

(Complaint, para. 159) that by refusing to certify as genuine certain items which Plaintiff had

previously so certified, PSA "maliciously and willfully injured Plaintiff's good name, reputation

and skills as a forensic examiner, impeaching the integrity of Plaintiff's business services."

Plaintiff further alleges (Complaint, para. 160) that PSA's rejection of these items "give the

impression that Plaintiff is dishonest, a swindler and engaged in misrepresentation, fraud and

conducting a racket." But the innuendo alleged by Plaintiff is created from whole cloth, and

completely unsupported by anything alleged to have been said by PSA.

Moreover, New York law distinguishes between non-actionable defamatory statements

concerning *inanimate objects*, and actionable statements concerning the *people* involved with

those objects. "A publication defamatory of a place or product is not a libel against its owner

unless the owner himself is accused of disreputable conduct." *El Meson Espanol v. NYM Corp.*,

521 F.2d 737, 739 (2d Cir. 1975). A plain reading of the Complaint, however, establishes that

Plaintiff alleges at most that PSA rendered opinions *as to the authenticity of certain memorabilia*

*items*, and not as to the quality of Plaintiff's own authentication services.  Basically, even if we assume that PSA knew that Plaintiff previously had declared the items genuine, Plaintiff is alleging no more than that PSA disagreed with him concerning his conclusions as to those items.

**B – PSA's Alleged Statements are Non-Actionable Opinions**

In cases involving libel or slander, a threshold issue for the court's determination is whether the statements at issue constitute fact or opinion because under the New York Constitution statements constituting pure opinion, "even if false and libelous, and no matter how pejorative or pernicious," are absolutely privileged and may not form the basis of an action in defamation. *Parks v. Steinbrenner*, 131 A.D.2d 60, 62, 520 N.Y.S.2d 374, 375 (1st Dep't 1987), *citing Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986). *See also Flamm v. American Assn of Univ. Women,* 201 F.3d 144, 147-48 (2d Cir. 2000); Whether a statement constitutes fact or opinion is a question of law and courts look to the following factors: (1) whether the specific language at issue has a precise meaning which is readily understood; (2) whether the statement(s) is capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers that what is being read is likely to be opinion, not fact. *See Brian v. Richardson*, 87 N.Y.2d 46 (1995); *Flamm, supra*, 201 F.3d at 153.  Specifically, the New York courts look to "'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" *Id.* at 51, quoting *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 254 (1991).

In this case, the only statements alleged by the Complaint to have been made by PSA relate to PSA's opinion as to the authenticity of signatures on certain unspecified memorabilia

items.  There is no allegation whatsoever that PSA made any statements of fact concerning the

items (much less concerning Plaintiff himself).  Nor is there any allegation that PSA's opinions

could be read as being based upon undisclosed facts, the Complaint alleging only that PSA stated

the opinions were based on PSA's "thorough examination" of the items. In the area of sports

autograph authentication, experts can and do differ.  To the extent that any item previously

certified authentic by Plaintiff was subsequently not certified as such by PSA, the situation was

no more than a difference of opinion, and not actionable as libel.

### C – Plaintiff Pleads No Special Damages

A libel plaintiff must either allege facts supporting a claim for libel per se, i.e., that the

alleged defamatory statement "tends to expose the plaintiff to public contempt, ridicule, aversion

or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to

deprive him of their friendly intercourse in society", or he must allege special damages.

In this case, Plaintiff's Seventh, Eighth and Ninth Causes of Action are pleaded as "Libel

Per Se", "Intentional Falsehood" and "Defamation".  As stated above, Plaintiff pleads no facts

supporting a libel per se claim.  Neither does Plaintiff plead special damages and all three causes

of action can be dismissed on that ground.

As the court stated in *Matherson v. Marchello*, 100 A.D.2d 233, 473 N.Y.S.2d 998 (2d

Dept 1984):

> Special damages consist of "the loss of something having economic or pecuniary
> value" (Restatement, Torts 2d, Section 575, comment b) which "must flow
> directly from the injury to reputation caused by the defamation, not from the
> effects of defamation" and it is settled law that they must be fully and accurately
> identified "with sufficient particularity to identify actual losses" When loss of
> business is claimed, the persons who ceased to be customers must be named and
> the losses itemized .  "Round figures" or a general allegation of a dollar amount as
> special damages do not suffice.

17

(citations omitted) See also *El Meson Espanol, supra*, 521 F.2d at 740, n.2 (citation omitted):

"The complaint seeks compensatory damages of $250,000 and a like amount for punitive damages. 'Such round figures, with no attempt at itemization, must be deemed to be a representation of general damages.'"

Plaintiff cites no lost customers, and no causal connection between any alleged PSA opinion and the actual loss of customers. Given Plaintiff's own extensive allegations concerning the FBI investigation and the 2006 HBO television program, which referred to him by name and which he alleges tarnished his reputation, the lack of any allegation of specific damages with respect to PSA's opinions is more egregious, and justifies dismissal of the libel, intentional falsehood and defamation claims.

## CONCLUSION

For the reasons stated above, the Complaint must be DISMISSED as against CU.

Dated: August 8, 2008

Respectfully submitted,

Armen R. Vartian (AV4124)
LAW OFFICES OF ARMEN R. VARTIAN
Attorney for Defendant Collectors Universe, Inc.