**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DONALD FRANGIPANI,                       :

              Plaintiff,            :

                            :

         -against-                :
                            :          MEMORANDUM DECISION
HBO; BRYANT GUMBEL; RICK BERNSTEIN;    :          AND ORDER
ROSS GREENBURG; KIRBY BRADLEY;         :          08 Civ. 5675 (GBD)
ANDREW BENNETT; JOE PERSKIE; TRES      :
DRISCOLL; and ARMEN KETEYIAN;          :
COLLECTORS UNIVERSE INC., d/b/a PSA/DNA :
AUTHENTICATION SERVICES; JAMES J.      :
SPENCE, LLC, aka JAMES SPENCE          :
AUTHENTICATION; JAMES SPENCE,          :
individually; RICHARD SIMON SPORTS;    :
RICHARD SIMON, individually;           :
                            :

              Defendants.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

        Plaintiff Donald Frangipani ("Plaintiff" or Frangipani") brings suit against Defendant

Collector's Universe ("PSA"), the Simon Defendants ("RSS"), and the Spence Defendants

("JSA") (collectively, the "Competitor Defendants") alleging, *inter alia*, violations of antitrust

and federal racketeering laws.  The crux of Plaintiff's First Amended Complaint ("Complaint") is

that from June 2004 to the present, the Competitor Defendants conspired, with one another, and

with others in the sports and celebrity memorabilia authentication industry, to negatively impact

Plaintiff's reputation and profits.  Plaintiff alleges that the Competitor Defendants rejected as

inauthentic any items previously authenticated by the Plaintiff.   Plaintiff also brings a

defamation claim against the Competitor Defendants and HBO.

Defendant Collector's Universe, the Spence Defendants, and Simon Defendants separately move to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. The Competitor Defendants' motions to dismiss are granted as to Plaintiff's antitrust and RICO claims. The Court declines supplemental jurisdiction over Plaintiff's state law claims against all Defendants.[1] Accordingly, the HBO Defendants are similarly dismissed from the case.[2]

BACKGROUND[3]

Plaintiff authenticates sports and celebrity memorabilia. He is a "forensic document examiner and handwriting expert,[4] with over forty years of experience in the scientific field of forensic document and handwriting examination." Compl. ¶ 2. Plaintiff has qualified, in New York, as a document examination and handwriting expert witness. Defendant Collector's Universe is the parent company of an authentication services company named PSA/DNA ("PSA"). The Spence Defendants include James Spence, former employee of PSA/DNA, and his subsequently formed authentication company, James Spence Authentication ("JSA"). The

---

[1] Plaintiff asserts state law claims for conspiracy to commit tortuous interference with prospective business relations; interference with business relations; unlawful deceptive acts under general business law § 349; libel per se; intentional falsehood; and defamation.

[2] Defendant HBO's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or in the alternative, for summary judgment, is therefore mooted.

[3] Unless indicated otherwise, the facts discussed below are taken from the complaint. For the purposes of deciding the defendants' motions to dismiss, all facts pleaded in the complaint are accepted as true. See Fed. R. Civ. P. 12(b)(6).

[4] A forensic document examiner is considered a handwriting expert. A forensic document examiner is a trained professional who draws conclusions about documents including, among other things, whether a document is authentic, whether a document has been altered and any other problem that arises concerning the legitimacy of writing on documents.

2

Simon Defendants include Richard Simon Sports, an authentication company, and its owner,

Richard Simon ("RSS").

They "are third-party authenticators of autographed memorabilia that is bought and sold

in interstate commerce." Compl. ¶ 62. A precondition to sale for nearly all items of memorabilia

is a certificate of authenticity ("COA"). In order to obtain a COA, a customer presents the

memorabilia to an authenticator, who upon examining the item, renders an opinion regarding

whether or not the signature is real, and not a forgery. If the item is believed to be authentic, the

autograph authenticator will issue a COA to the customer. The COA signals to potential future

buyers of the item that the signature on the item has been deemed genuine. "Dealers and

collectors will often take an item that has been previously authenticated to a second authenticator

for a second opinion." Compl. at ¶ 56. Memorabilia items are sold at auction houses, and on

online auction houses such as eBay.

Plaintiff alleges that PSA and JSA control eBay, auction houses, and trade publications

because dealers and collectors use the services of PSA and JSA, "almost exclusively." Id. at ¶

221. Plaintiff contends that PSA routinely indicated that items authenticated by Frangipani are

not likely to be genuine. Plaintiff further alleges that PSA and JSA refused to render COAs to

items the Plaintiff previously authenticated as genuine.[5] Plaintiff also contends that under

Defendant Spence's direction, PSA instructed employees to reject items authenticated by

independent authenticators. According to Plaintiff, Defendant Spence continued this practice

---

[5] Specifically, Plaintiff alleges that PSA, JSA, and RSS agreed to "reject as not authentic, or
refuse to issue COA's for any item of memorabilia previously authenticated by Frangipani or any
other independent authenticator." Compl. ¶ 209. Plaintiff further alleges that PSA, JSA and
RSS " reject[ed] as not authentic or refused to issue COA's for any item of memorabilia
submitted by a dealer or collector who [did] not utilize PSA or JSA to authenticate their
memorabilia inventory." Id.

3

after he formed JSA.  Plaintiff contends that as a result of these practices, dealers and collectors

know that their items will not be accepted for sale on eBay or at the auction houses, unless their

items have a COA issued by PSA or JSA.  Compl. at ¶¶ 154, 177.  Plaintiff also alleges that PSA

and JSA "have at least 90% of the market share in the United States . . . ." and have excluded

Frangipani from the market.  Id. at ¶¶ 219, 222.

In 2006, HBO released a "Real Sports" Emmy-award winning video segment that referred

to Plaintiff as the "authenticator of choice" for an illegal forgery ring.  Id. at ¶¶ 29-30.  According

to Plaintiff, the segment "harmed [his] reputation and business, and [has] crippled his ability to

act as a document and handwriting expert in legal matters."  Id. at ¶ 48.

### Standard for Dismissal under Fed. R. Civ. P. 12(b)(6)

For purposes of a 12(b)(6) motion, the Court is to liberally construe the complaint,

accepting the factual allegations as true, and drawing all reasonable inferences in Plaintiff's

favor.  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 124 (2d Cir. 2008).  The complaint

must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007).

> To survive a motion to dismiss under Twombly, it is not enough to make allegations of an
> antitrust conspiracy that are consistent with an unlawful agreement; to be viable, a
> complaint must contain enough factual matter (taken as true) to suggest that an agreement
> [to engage in anticompetitive conduct] was made.  While Twombly does not require
> heightened fact pleading of specifics, it does require enough facts to nudge [plaintiffs']
> claims across the line from conceivable to plausible.

Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.), 502 F.3d 47, 50 (2d Cir.

2007) (internal quotations and citations omitted) (citing Twombly, 550 U.S. 544, 570 (2007)).

4

### Sherman Act Section 1 Claim

Plaintiff alleges antitrust violations under §§ 1 and 2 of the Sherman Act. Liability under § 1 of the Sherman Act requires "a contract, combination . . ., or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1; see also Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95-96 (2d Cir. 1998). To properly plead a § 1 violation under the Sherman Act, a plaintiff must allege enough factual matter to suggest that an agreement was made. "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Twombly, 550 U.S. at 556 (footnote omitted)). A "bare assertion of conspiracy will not suffice." Twombly, 550 U.S. at 557. Moreover, "[a]n allegation of parallel conduct . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted).

The courts utilize two doctrines in analyzing Section 1 claims under the Sherman Act – the *per se* rule and the rule of reason. The *per se* rule applies to certain categories of trade restraints "which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable . . . ." No. Pac. Ry. v. United States, 356 U.S. 1, 5 (1958). The *per se* rule applies to conduct such as "group boycotts, division of markets, and tying arrangements." Bogan v. Hodgkins, 166 F.3d 509, 514 (2d Cir. 1999). If conduct does not fall into the *per se* category, courts will apply the rule of reason to determine whether the restraint encourages or limits competition. Nat'l Soc. of Prof. Engineers v. U.S., 435 U.S. 679, 691 (1978). An antitrust defendant's "conduct will be deemed illegal only if it *unreasonably*

restrains competition." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 308

(2d Cir. N.Y. 2008) (emphasis added) (quoting Major League Baseball Props., Inc., 420

F.Supp.2d 212, 219 (S.D.N.Y. 2005) (internal quotation marks omitted)).  Under the rule of

reason,

> The true test of legality is whether the restraint imposed is such as merely regulates and
> perhaps thereby promotes competition or whether it is such as may suppress or even
> destroy competition. To determine that question the court must ordinarily consider the
> facts peculiar to the business to which the restraint is applied; its condition before and
> after the restraint was imposed; the nature of the restraint and its effect, actual or
> probable. The history of the restraint, the evil believed to exist, the reason for adopting
> the particular remedy, the purpose or end sought to be attained, are all relevant facts. This
> is not because a good intention will save an otherwise objectionable regulation or the
> reverse; but because knowledge of intent may help the court to interpret facts and to
> predict consequences.

Board of Trade of the City of Chicago et. al., v. U.S., 246 U.S. 231, 238 (1918).  "[W]hen a

challenged practice is subject to rule-of-reason analysis, the antitrust claimant bears the initial

burden of showing an actual adverse effect on competition in the relevant market."  Major

League Baseball Props., Inc., 542 F.3d at 308.

Plaintiff alleges that PSA, JSA, and RSS violated Section 1 of the Sherman Act by

"conspir[ing] and combin[ing] to eliminate competition in the authentication of autographed

entertainment and sports memorabilia industry nationwide."  Compl. ¶ 205.  The complaint

alleges that PSA, JSA, and RSS "have executed a course of conduct deliberately and

purposefully designed to prevent [Plaintiff] and other independent authenticators from effectively

competing in the market, adversely affecting interstate commerce."  Compl. ¶ 206.  Specifically,

Plaintiff alleges that the Competitor Defendants wanted to squeeze out all forensically trained

authenticators and corner the market in that area.  Plaintiff contends that Competitor Defendants

6

began to reject anything that came from Plaintiff and other unnamed forensically trained authenticators.  Plaintiff's allegations, however, fail to trigger the *per se* rule,  and are similarly insufficient under rule of reason analysis.  Thus, Plaintiff's Section 1 claim must be dismissed.

First, Plaintiff's claims under the *per se* rule fails because they are conclusory in nature and lack the requisite factual allegations in support.  Plaintiff contends that the Competitor Defendants' actions are tantamount to a boycott and are illegal under the *per se* rule.  Plaintiff's complaint, however, fails to allege facts to indicate a concerted effort to engage in a group boycott or refusal to deal.  While Plaintiff alleges that PSA and JSA, along with the unnamed independent contractors who work for PSA and JSA, have collectively refused to authenticate or have rejected as fake any item presented to them that Plaintiff previously authenticated, Plaintiff fails to allege that there is an agreement between them.  Compl. ¶¶ 72, 73, 75.  Plaintiff alleges that the sole reason for rejecting the authenticity of any item previously authenticated by Plaintiff is the fact that "Frangipani previously authenticated it."  Compl. ¶ 129.  Plaintiff fails to allege conduct that has the type of pernicious effect on competition that the *per se* rule is intended to cover.  Plaintiff's allegations thus fail to establish that application of the *per se* rule would be warranted.

Plaintiff's complaint is similarly insufficient to state a claim under the rule of reason.  It is a well-established rule that "[t]he antitrust laws were enacted for the 'protection of competition, not competitors." Major League Baseball Props., Inc., 542 F.3d at 318 (quoting Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 338, 110 S. Ct. 1884, 109 L. Ed. 2d 333 (1990).  Plaintiff has not alleged sufficient facts indicating that there was an actual adverse effect on market competition.

Plaintiff has not pled a factual basis for the conclusory assertion that PSA and JSA's alleged anti-competitive conduct harms competition, separate from the alleged injury to Plaintiff alone.  Notably, the complaint lists over 30 items previously authenticated as genuine by Plaintiff between 2004 and 2008, which were later declared "fake" by PSA.  Compl. ¶ 83.  Plaintiff submits no factual allegations regarding the purported other independent forensic authenticators who allegedly suffer the same treatment by PSA. Plaintiff alleges that "JSA and PSA have successfully monopolized the authentication business . . . with the specific intent of weakening or eliminating competition from Frangipani and other forensic authenticators." Compl. ¶ 172.  The complaint further references the existence of various unnamed independent authenticators, and highlights the absence of forensically trained authenticators on staff at PSA. Compl. ¶ 68.  However, the complaint fails to indicate on what basis Plaintiff is alleging a widespread harm against "other independent authenticators," and how consumers are negatively affected by the limited use or non-use of some unknown number of forensically trained authenticators besides himself.  The factual allegations in Plaintiff's complaint recount personal grievances about his own lack of business, and not about the negative consequences to competition in the market.

Further, Plaintiff fails to allege and plead facts sufficient to raise the inference that the actions by the defendants and others are concerted activity.  Plaintiff cites the fact that Defendant Spence was employed by PSA and now works at JSA as a "plus" factor that supports his allegation that there was tacit coordination.  Compl. ¶¶ 127-28.  However, the fact that Defendant Spence worked at PSA and now works at JSA, and may have continued a practice of rejecting Frangipani-authenticated items, even if assumed true for purposes of the motion, does not constitute concerted action or a conspiratorial agreement among the companies.  Compl. ¶¶ 14-

8

15.  Plaintiff has not alleged that anyone at PSA directed or agreed with Defendant Spence to continue and coordinate this alleged practice.  As the Supreme Court held in <u>Twombly</u>, while parallel conduct may serve as circumstantial evidence indicating an agreement, it is insufficient to withstand a motion to dismiss in the absence of any allegations tending to show coordinated conduct, as opposed to independent action.  <u>See</u> <u>Twombly</u>, 550 U.S. at 553.  Businesses have a right to choose with whom they will and will not deal.  <u>Trans Sport, Inc. v. Starter Sportswear, Inc.</u>, 964 F.2d 186, 189 (2d Cir. 1992).  In this instance, Plaintiff failed to plead facts tending to show that PSA, JSA, and RSS conspired to jointly preclude others from the memorabilia authentication industry.

Plaintiff's claims under Section 1 of the Sherman Act are therefore dismissed.

### Sherman Act Section 2 Claim

A violation of Section 2 of the Sherman Act occurs when a person:

> shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations. . .

15 USC § 2.  The monopoly claim has two main elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident.  <u>United States v. Grinnell Corp.</u>, 384 U.S. 563, 570-71 (1966).  In addition, "[a] claim under Section 2 must allege (1) concerted action, (2) overt acts in furtherance of the conspiracy, and (3) specific intent to monopolize."  <u>Elec. Commc'n Corp. v. Toshiba Am. Consumer Prods., Inc.</u>, 129 F.3d 240, 246 (2d. Cir. 1997) (citing <u>Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council</u>, 857 F.2d 55, 74 (2d Cir. 1988).

9

Plaintiff's claims under Section 2 of the Sherman Act also fail. Plaintiff alleges that between the years 2000 and 2005 "PSA and JSA have created [a] monopoly[6] by eliminating the competition in the market of independent third-party authenticators, such as Frangipani." Compl. ¶ 218. The complaint states that PSA utilized "various racketeering enterprises and anti-competitive actions [to] buil[d] itself up to be the dominant authenticator of autographed memorabilia." Compl. ¶ 67. Plaintiff further alleges that PSA and JSA attained dominance of the relevant market through these anti-competitive practices.

Plaintiff's assertions, however, are wholly conclusory in nature. First, Plaintiff alleges that PSA and JSA have at least 90% of the market share in the United States. Compl.¶ 219. Plaintiff, however, has failed to allege factual support for this assertion. Nor has Plaintiff alleged facts that demonstrate that JSA and PSA have any impact on the memorabilia industry. Furthermore, Plaintiff has failed to allege facts sufficient to support his allegation that consumers refused to utilize Plaintiff's services because of PSA and JSA's allegedly concerted actions, as opposed to some other legitimate business reason. For example, Plaintiff alleges that Defendants "collectively provide authentication services for all of the auction houses in the United States that sell autographed sports and celebrity memorabilia." Opp. Br. at 4. However, Plaintiff fails to sufficiently allege that Defendants obtained this position through unlawful, as opposed to lawful, means. Furthermore, the only authenticator who is alleged to have been affected by JSA and

---

[6]The complaint defines the market as the United States autograph authentication industry for sports and entertainment memorabilia. Compl. ¶¶ 62, 63, 172, 173.

10

PSA's allegedly unlawful conduct is Plaintiff.[7]  Indeed, Plaintiff fails to identify any other

authenticators who are harmed by the Competitor Defendants' actions.

Plaintiff's claims under Section 2 of the Sherman Act are dismissed.

## RICO Claims

Plaintiff also asserts claims under the Racketeer Influenced and Corrupt Organizations

Act, 18 U.S.C. § 1962(c) ("RICO"), against PSA and Defendant Spence.  Title 18 U.S.C. §

1962(c) provides in pertinent part that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged
> in, or the activities of which affect, interstate or foreign commerce, to conduct or
> participate, directly or indirectly, in the conduct of such enterprise's affairs through a
> pattern of racketeering activity . . . .[8]

18 U.S.C. § 1962(c).  To establish a violation of 18 U.S.C. § 1962(c) a plaintiff must show "(1)

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L.

v. Imrex Co., 473 U.S. 479, 496 (1985); Cofacredit, S.A. v. Windsor Plumbing Supply Co. Inc.,

187 F.3d 229, 242 (2d Cir. 1999).  A plaintiff must further allege that the defendant's alleged

fraudulent scheme is the proximate cause of his injury.  Holmes v. Securities Investor Protection

---

[7] Further, the Plaintiff's allegations that the HBO segment tarnished his image weigh against the
allegation that Plaintiff's decrease in business is the result of PSA, RSS, and JSA's alleged anti-
competitive practices.

[8] The terms "enterprise," "racketeering activity," and "pattern of racketeering activity" are defined
in 18 U.S.C. § 1961.  A RICO enterprise "includes any individual, partnership, corporation,
association, or other legal entity,  and any union or group of individuals associated in fact
although not a legal entity."  18 U.S.C. § 1961(4).  "Racketeering activity" is broadly defined to
encompass a variety of state and federal offenses.  See 18 U.S.C. § 1961(1).  A "pattern of
racketeering activity requires at least two acts of racketeering activity, one of which occurred
after the effective date of this chapter and the last of which occurred within ten years . . . after the
commission of a prior act of racketeering activity."  18 U.S.C. § 1961(5).

11

Corp., 503 U.S. 258, 268 (1992).[9]  Plaintiff alleges, as RICO predicate acts, mail and wire

fraud.[10]  Plaintiff's complaint fails to plead RICO violations.

Plaintiff's conclusory RICO allegations are wholly insufficient.  In his complaint,

Plaintiff alleges over 15 individuals who acted as "RICO enterprises.[11]  As to each "enterprise,"

Plaintiff alleges that "since at least 2004 to the present, [the enterprise] conducted, participated

in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the

enterprise through a pattern of racketeering activity . . . . ."  Compl. ¶¶ 224-235.  During oral

arguments, Plaintiff explained that he believes the enterprises are "JSA and the auction houses"

as well as "JSA and the independent contractors" that they hire to examine the memorabilia

items.  See August 4, 2009 Hearing Tr. at 103-108.  Plaintiff further stated that the auction

houses participated in the scheme because they get cheap authentications in return. See id. at

109-110.

The factual allegations of Plaintiff's complaint fail to establish that Defendants,

operating as a cohesive unit, committed mail and wire fraud in furtherance of a joint continuous

scheme.  The allegations do not establish an ongoing joint enterprise, a period of repeated

criminal conduct, nor a series of related predicate acts.  Plaintiff cannot satisfy his pleading

---

[9]In Holmes, the Court expressed the concern that "the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, *independent*, factors."  Holmes, 503 U.S. at 269 (emphasis added).  See also DeFalco v. Bernas, 244 F.3d 286, 329 (2d Cir. 2001) ("[A] plaintiff's injury must be both factually and proximately caused by a defendant's violation of section 1962.").

[10]The elements of mail and wire fraud are:  "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme."  Chanayil v. Gulati, 169 F.3d 168, 170-71 (2d Cir. 1999) (citing S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996)).

[11] JSA, PSA, and Spence are listed as enterprises along with a variety of other entities including eBay.

12

requirement by stringing together independent acts by different entities and claim it was a joint undertaking for an illegitimate purpose. Indeed, Plaintiff's competing statements contradict some of his RICO allegations. For example, Plaintiff in his RICO claim, contends that the independent forensic examiners are willing participants in this fraudulent enterprise. However, Plaintiff also alleges that JSA has 90% market share, and independent forensic examiners are thus compelled to comply with JSA's wishes. Additionally, in support of his antitrust claims, Plaintiff contends that independent authenticators are victims of Defendants' anti-competitive practices. These allegations belie Plaintiff's assertions that, at the same time, the independent forensic examiners were willing participants in the enterprise.

Second, Plaintiff also fails to allege the predicate mail and wire fraud acts with the requisite particularity.[12] RICO predicate acts of fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b). See Moore v. PaineWebber, Inc., 189 F.3d 165, 172-173 (2d Cir. 1999) (explaining that RICO predicate acts of fraud must be pled with particularity under Federal Rule of Civil Procedure 9(b)).[13] As the Second Circuit has explained, "[a]llegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993).

---

[12]The elements of mail and wire fraud are: "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire, mail, or television communications in interstate commerce in furtherance of the scheme." Chanayil v. Gulati, 169 F.3d 168, 170-71 (2d Cir. 1999) (citing S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996)).

[13]See also Mills, 12 F.3d 1170, 1175 (2d Cir. 1993) ("[I]n order to state a claim for fraud with the requisite particularity, the complaint must also: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.).

Plaintiff contends that "JSA and/or Spence fraudulently reject[ed] . . . items previously authenticated by Frangipani, claiming they were not authentic . . . ." Compl. ¶ 110; see also Compl. ¶¶ 118, 237(c), 238-240. Plaintiff's allegations are insufficient. First, Plaintiff fails to allege who the "fraudulent letters" were sent to or who sent the letters. As such, Plaintiff failed to identify the particular speaker of the alleged fraudulent statements. See Mills, 12 F.3d 1170, 1175 (2d Cir. 1993) (explaining that in order to state a claim for fraud with the requisite particularity, the complaint must, among other things, identify the speaker). Although Plaintiff lists the Defendants' name as well as the Owners' names of the items that were rejected as fakes, Plaintiff fails to allege whether the owner was the one who received the rejection letters as well as who from the company conspired to make the alleged fraudulent statements. Compl. ¶ 110.

In his complaint, Plaintiff further alleges that "upon information and belief, PSA instructs its employees and other independent contractors . . . to routinely reject as a forgery . . . any item of memorabilia that has previously been authenticated by other forensic authenticators, such as Frangipani." Compl. ¶72. Plaintiff, however, fails to identify the other independent forensic authenticators and fails to allege how or why any statements contained in the rejection letters were fraudulent. Indeed, the complaint fails to allege that any of the Defendants issued rejection letters even though they knew that the items were in fact genuine.

Lastly, Plaintiff also fails to plead proximate cause. Plaintiff's allegations do not establish a link between the claimed injury and the predicate acts alleged. See Anza v. Ideal Supply Corp., 547 U.S. 451, 458 (2006). Plaintiff alleges that PSA sent letters to customers fraudulently stating that it had performed a "thorough examination" of the item. Plaintiff alleges that instead of examining the item, Defendants automatically declared the items previously

14

authenticated by Plaintiff as fake. However, the injury the Plaintiff alleges in the complaint is, essentially, his absence of repeat business.[14] But, any alleged injury would be to the customer by PSA, JSA, and Defendant Spence's alleged fraudulent or neglectful denial of a COA. Plaintiff's alleged individual harm, primarily loss of repeat business and income, is thus distinct from the alleged RICO violation. See Anza, 547 U.S. at 460 ("A RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense").

For the foregoing reasons, Plaintiff's RICO claims are dismissed.

## Conclusion

The Plaintiff's federal antitrust and RICO claims are dismissed. In the absence of viable federal claims, the Court declines supplemental jurisdiction over Plaintiff's state law claims. Accordingly, the complaint against all Defendants, including Defendant HBO, is dismissed.

Dated: New York, New York
          March 16, 2010

SO ORDERED:

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

---

[14]Plaintiff, for example, alleges "dealers or collectors who previously routinely utilized Frangipani's services now obtain their authentication services from PSA or JSA." Compl. ¶ 124. Plaintiff further contends that his reputation was damaged and that he lost customers and goodwill due to PSA and JSA's "fraudulent misrepresentations about the examinations they have conducted and their fraudulent determinations regarding the authenticity of items previously examined by Frangipani." Compl. ¶ 123.

15